IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDRA JACOB,                         3:15-CV-01414-BR

            Plaintiff,                   OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.


MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

            Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

       Attorneys for Defendant

**BROWN, Judge.**

       Plaintiff Alexandra Jacob seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

       Plaintiff filed an application for SSI on March 30, 2012, and alleged a disability onset date of October 27, 1990. Tr. 157.[1]  Her application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on November 7, 2013.  Tr. 31-52.  At the hearing

---

      [1] Citations to the official transcript of record filed by the Commissioner on September 10, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

Plaintiff and a vocational expert (VE) testified.  Plaintiff was represented by an attorney.  On November 19, 2013, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 18-30.  On June 1, 2015, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on October 27, 1990, and was 23 years old at the time of the hearing.  Tr. 157.  Plaintiff graduated high school.  Tr. 21.  Plaintiff does not have any past relevant work experience.  Tr. 24.

Plaintiff alleges disability due to hydrocephalus.  Tr. 171.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 23-24.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her

3 - OPINION AND ORDER

inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

## I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R.

§ 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).

*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her March 30, 2012, application date. Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of a history of hydrocephalus, "personality change due to hydrocephalus," and a cognitive disorder. Tr. 20.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff

has the RFC to perform a full range of work at all exertional
levels,

> but with the following nonexertional limitations:
> (1) [she] is fully capable of learning,
> remembering, and performing simple, routine and
> repetitive work tasks, involving simple work
> instructions, which are performed in a routine,
> predictable, and low stress work environment,
> defined as one in which there is a regular
> production pace and few work place changes;
> (2) [she] is limited to occasional contact with
> the public; and (3) [she] will perform optimally
> in a quiet work environment where there are few
> distractions.

Tr. 22.

At Step Four the ALJ found Plaintiff does not have any past
relevant work experience.  Tr. 24.

At Step Five the ALJ found Plaintiff could perform jobs that
exist in significant numbers in the national economy.  Tr. 25.
Accordingly, the ALJ found Plaintiff is not disabled.


**<u>DISCUSSION</u>**

Plaintiff contends the ALJ erred when he (1) "improperly
used Plaintiff's activities of daily living against her";
(2) partially rejected the statements of Plaintiff's mother,
Mavis Jacob; and (3) improperly failed to include in Plaintiff's
RFC all of the limitations contained in the opinion of examining
psychologist Robinann Cogburn, Ph.D.

I.    **The ALJ properly evaluated Plaintiff's activities of daily living**.

Plaintiff contends the ALJ erred when he "[improperly] evaluated Plaintiff's activities of daily living."

The ALJ found Plaintiff has a mild restriction in her activities of daily living.  The ALJ noted Plaintiff reported in her May 2012 Adult Function Report that she is able to do all of her personal care and grooming without help, but she needs her mother to remind her to do it.  Tr. 186.  Plaintiff also reported she does housework such as laundry and cleaning; watches television; rides her bike; reads; exercises; listens to music; and uses the computer to use Facebook, to read email, and to apply for jobs.  Tr. 188-89.  Plaintiff noted she attended Adult Basic Education classes three days per week, spends time with friends at least once a week, goes to church, goes to the mall, and gets along with authority figures.  Tr. 187-90.  The ALJ also noted the description of Plaintiff's daily activities noted by Dr. Cogburn in her March 2013 psychodiagnostic evaluation including watching television, caring for her young niece and nephew, using the computer, feeding her dog and cat, doing laundry, and helping her sister with her homework.  Tr. 24, 435. The ALJ also noted Dr. Cogburn's report that Plaintiff is able to use public transportation and to shop independently.  Tr. 435. At the hearing Plaintiff testified she sometimes cooks food for her younger sister when she is taking care of her although

9 - OPINION AND ORDER

Plaintiff noted she "tend[s]" to text her mother often to ask her
what she would like Plaintiff to make and how to do it.  Tr. 37.
Plaintiff also testified, however, that she can make barbequed
chicken in the oven easily because she has done it before.
Tr. 37.

     The ALJ found Plaintiff is "capable of performing work
within the established residual functional capacity."  Tr. 24.
The ALJ relied on the fact that Plaintiff testified she is
babysitting her sister from 11:30 a.m. to 9:30 p.m. as well as
occasionally babysitting her young niece and nephew.  Tr. 24.
The ALJ also noted Plaintiff attends Adult Education Classes
three days per week, obtained a modified diploma from high
school, attended eight terms at Portland City College taking
remedial classes, uses Tri-Met, was a cashier at a food cart at
her school, uses the computer, and does volunteer work at her
church.  The ALJ concluded these activities of daily living were
consistent with his evaluation of Plaintiff's RFC, which included
limitations to learning, remembering, and performing simple,
routine, and repetitive tasks; following simple work
instructions; and performing the simple, routine, and repetitive
tasks in a routine, predictable, and low-stress work environment.

     The Ninth Circuit has made clear that when a claimant's
reports about her activities of daily living are subject to more
than one interpretation, the ALJ's interpretation is entitled to

10 - OPINION AND ORDER

deference as long as it is reasonable. *See, e.g., Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001)("It is true that [the plaintiff's] testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

On this record the Court finds the ALJ's interpretation of Plaintiff's activities of daily living was reasonable and supported by the evidence. The Court, therefore, concludes the ALJ did not improperly evaluate Plaintiff's activities of daily living.

## II.  The ALJ did not err when he partially rejected the statements of Plaintiff's mother, Mavis Jacob.

Plaintiff contends the ALJ erred when he partially rejected the May 12, 2012, Adult Function Report provided by Mavis Jacob.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

11 - OPINION AND ORDER

The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). The ALJ, however, may find the nature of a claimant's "close relationship" with a lay witness undermines her credibility when the lay witness is "possibly 'influenced by her desire to help'" the claimant. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). *See also Kintner v. Astrue*, No. CV-07-3048-CI, 2008 WL 680201 (E.D. Wash. Mar. 7, 2008)(lay-witness not "disinterested" or objective due to her close relationship with the claimant).

In her Report Mavis Jacob indicated Plaintiff becomes frustrated easily, has to be told what to do every day, and can only follow one direction at a time. Tr. 176. She noted Plaintiff cannot "do a list of stuff or follow a list of directions." Tr. 176. Mavis Jacob noted Plaintiff takes care of her pets "begrudgingly," takes "ABE classes" three days per week, does laundry with help, cleans her room after being reminded to do so, talks on the telephone, texts, uses Facebook, goes to church, and rides her bicycle. Tr. 177-81. She reported she has "to keep telling [Plaintiff] what to do" because otherwise Plaintiff "sometimes gets confused" when attempting to follow instructions. Tr. 181. She noted Plaintiff does not handle stress well, she "gets flustered [and] cries" and "needs to have a routine." Tr. 182.

12 - OPINION AND ORDER

The ALJ gave "full consideration" to Mavis Jacob's report and found it "generally supports the conclusion that [Plaintiff] is able to perform at the residual functional capacity" set out by the ALJ. Tr. 24. The ALJ rejected Mavis Jacob's statements to the extent that they "suggest[] . . . [Plaintiff's] impairments render her unable to work." Tr. 24. The ALJ noted Mavis Jacob's close relationship with Plaintiff and "desire to help her, likely influenced her opinion regarding [Plaintiff's] abilities." Tr. 24. The ALJ also noted Plaintiff lives with her mother, who is also unemployed and, therefore, has a financial incentive for Plaintiff to receive benefits.

The Court concludes on this record that the ALJ did not err when he partially rejected Mavis Jacob's statements because the ALJ provided specific reasons germane to the witness for doing so.

**III. The ALJ did not improperly fail to include in his evaluation of Plaintiff's RFC all of the limitations contained in Dr. Cogburn's opinion.**

Plaintiff contends the ALJ erred when he improperly failed to include in Plaintiff's RFC all of the limitations contained in the March 2013 opinion of Dr. Cogburn, examining psychologist.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial

evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

On March 7, 2013, Dr. Cogburn conducted a psychological evaluation of Plaintiff at the request of the Office of Vocational Rehabilitation Services.  Dr. Cogburn reviewed a number of Plaintiff's medical records and administered several tests to Plaintiff.  Dr. Cogburn concluded Plaintiff

> presents with prominent symptoms of organic personality impairment, including pervasive failure of initiation as well as irritability and reactivity.  Testing reveals deficits in memory, perceptual reasoning, and executive functions. Academic skills are within the expected range.
>
> Consistent with her organically based apathetic tendency and deficit in initiation of actions, Ms. Jacob has taken few steps toward self-sufficiency and seems to view her participation in services as nothing more than passive compliance with her mother's instructions.
>
> Although there was no indication of intentional distortion or impression management, some of her statements were inconsistent with her records. Generally, she seemed to describe herself as experiencing fewer problems and receiving less support than is actually the case.  This is consistent with other indications of limited insight regarding her impairments and needs. These factors raise concern that her functional deficits may be greater than she describes.

Tr. 440.  Dr. Cogburn also concluded "it appears likely that

14 - OPINION AND ORDER

[Plaintiff] is affected by limitations across all functional
domains." Tr. 440. Dr. Cogburn included a number of
recommendations including the following:

> A supported employment situation would be
> appropriate. [Plaintiff] is likely to succeed
> most easily when performing highly structured
> tasks with close supervision in a quiet
> environment with few distractions.
>
> If competitive placement is attempted, [Plaintiff]
> is likely to succeed most easily in an occupation
> where tasks are highly structured, easily learned,
> sequential, and repetitive. She is likely to have
> significant difficulty organizing tasks
> independently.
>
> She is likely to need repeated instruction and
> frequent reminders.
>
> She may benefit from work with a job coach to
> learn skills and routines in a work setting.

Tr. 441.

The ALJ gave significant weight to Dr. Cogburn's opinion.
Tr. 23. The ALJ, however, noted Dr. Cogburn's "limitations are
not explained with specificity. Nonetheless, [her] opinion is
generally consistent with the conclusion that [Plaintiff] is
limited to the [RFC] outlined" in the ALJ's opinion. Tr. 23.

Plaintiff, nevertheless, asserts the ALJ erred when he
failed to include limitations recommended by Dr. Cogburn in his
assessment of Plaintiff's RFC. Specifically, Plaintiff alleges
the ALJ's conclusion as to Plaintiff's RFC fails to account for
the need for close supervision, Plaintiff's difficulty in
organizing tasks independently, and Plaintiff's need for a job

15 - OPINION AND ORDER

coach.

A Plaintiff's RFC is "not the *least* an individual can do despite his or her limitations or restricts, but the *most*." SSR 96-8p at *1 (emphasis in original).  Accordingly, courts have held ALJs do not need to include limitations in a plaintiff's RFC that are merely recommendations as opposed to imperatives.  *See, e.g., Rounds v. Comm' Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)(The ALJ did not err when he failed to include recommendations by the plaintiff's examining psychologist because they were merely recommendations rather than "specific imperatives regarding [the plaintiff's] limitations."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009)(The ALJ did not err when he did not include certain recommendations of the plaintiff's examining psychologist in the plaintiff's RFC because the psychologist's "observation about 'highly routinized, overlearned tasks with low cognitive demand' is neither a diagnosis nor statement of [the plaintiff's] functional capacity. It is rather a recommended way for [the plaintiff] to cope with his PTSD symptoms."); *Litwin v. Colvin*, No. C15-1334-JLR-MAT, 2016 WL 487707, at *3 (W.D. Wa. Jan. 15, 2016)("Dr. Donahue's opinions regarding Plaintiff's social and adaptation limitations need not be accounted for in the RFC assessment, because they were written as recommendations for an optimal work environment, rather than requirements."); *Glosenger v. Comm'r Soc. Sec.*

*Admin.*, No. 3:12-cv-1774-ST, 2014 WL 1513995, at *6 (D. Or. Apr. 16, 2014)("Dr. Dean's list of accommodations were couched as mere 'recommendations,' which, while useful in determining [the plaintiff's] ideal work environment, are distinct from her functional capacity which the RFC is designed to capture.").

Here the limitations that Plaintiff contends the ALJ failed to include in Plaintiff's RFC are included in Dr. Cogburn's evaluation as "recommendations" rather than as a diagnosis or as specific functional limitations.  In addition, the ALJ accounted for a number of Dr. Cogburn's recommendations when he limited Plaintiff to simple, routine, repetitive work tasks that involve only "simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular production pace and few work place changes" and noted Plaintiff "will perform optimally in a quiet work environment where there are few distractions."  Tr. 22.

On this record the Court concludes the ALJ did not err when he did not include all of Dr. Cogburn's recommendations in his evaluation of Plaintiff's RFC because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of September, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER